IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRIEDA T. JONES,

     Plaintiff,

v.

NIPPON CARGO AIRLINES CO.,
LTD., and GRANE DISTRIBUTION
SERVICES, LLC,

     Defendants.

CIVIL ACTION FILE NO.

1:17-cv-1589-TWT-JKL

## NON-FINAL REPORT AND RECOMMENDATION

This employment discrimination case is presently before the Court on Defendant Grane Distribution Services, LLC's motion to dismiss the claims asserted against it in Plaintiff Frieda T Jones's Amended Complaint [Doc. 25], and Jones's own motion for leave to file a second amended complaint [Doc. 32.] For the reasons that follow, I **RECOMMEND** that Grane's motion to dismiss be **DENIED**, and that Jones's motion for leave to amend be **GRANTED IN PART AND DENIED IN PART**. Jones's proposed amended claims against Defendants for discrimination, retaliation, negligent supervision and retention, and quantum

meruit/unjust enrichment should be allowed to proceed; however, leave to assert claims for assault and battery should be denied because the claims as proposed would be futile.

## I.    BACKGROUND

### A.    Original Complaint

Jones, represented by counsel, originally filed this action in May 2017 against DAL Global Services, LLC ("DAL"); Nippon Cargo Airlines Co., Ltd. ("Nippon"); Grane Distribution Services, LLC ("Grane"); and Manabu Masuda, an alleged employee of Grane.  [Compl., Doc. 1.]  In her original complaint, Jones asserted claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); and state law.  [*Id.*]  In explaining her relationship with Defendants, Jones alleged that in June 2015, she was employed by a division of DAL providing temporary staffing services and placed with Grane, a fleet truck operator, which in turn was part of Nippon's distribution and supply chain; she explained that while placed with Grane, she worked exclusively on the distribution of Nippon goods, that Grane and Nippon jointly directed and controlled all aspects of her employment, and that she was supervised by Masuda, a Grane employee.

2

[*Id.* ¶¶ 17-34.]

Jones alleged that she worked in an office suite with Masuda, an employee of Grane; Joyce Abercrombie, an employee of Nippon; Joseph Kpade, a joint employee of Grane and Nippon; and Damon Townsend, a Grane employee. [Compl. ¶ 34.] She asserted that between August 2015 and October 2015, Kpade subjected her to sexually offensive comments, conduct, and touching, including touching his penis, requesting fellatio, grabbing her buttocks, and groping her breasts. [*Id.* ¶¶ 49-51, 58-61.] Despite witnesses' presence, her own complaints to supervisors (including both Masuda and Abercrombie), Kpade's known history has a harasser, and her requests for transfer, Jones alleged that no action was taken; and that instead, Kpade's treatment of her worsened, and upon Kpade's demand that Jones be fired, Masuda sent her home without pay. [*Id.* ¶¶ 52-58, 62-69.]

After Jones's suspension and an investigation, Kpade was discharged, and Jones was eventually allowed to return to work (though apparently not paid during her leave). [Compl. ¶¶ 68-70.] Upon her return, however, Kpade periodically appeared at her job site (and had friends and family there who supported him and/or antagonized Jones), and despite her requests for transfer and complaints to supervisors about feeling threatened, no additional action was taken to protect her

3

from Kpade.  [*Id.* ¶¶ 71-74.]  As an apparent accommodation, Jones was allowed to report to work any time before 10:00 AM rather than strictly at 8:30 AM.  [*Id.* ¶ 75.]

After allegedly retaliatory comments were made to Jones or about her to others (either in her presence or otherwise), she filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 4, 2016, (1) which specifically named DAL and Nippon, (2) the later of which was addressed to "Nippon Cargo Airlines, Ltd. C/O Grane Distribution," and (3) which alleged sexual harassment by Kpade and retaliation by the companies following complaints to Abercrombie and Masuda, among others.  [Compl. ¶¶ 77-79, Ex. A.] She asserted that after filing the charges, she was terminated at the end of March 2016, after which time she amended her charges with the EEOC to include her termination.  [*Id.* ¶¶ 80-85, Ex. B.]  She received her notices of right to sue from the EEOC around February 2, 2017.  [*Id.* ¶ 86, Ex. C.]

Based upon the described conduct above, Jones alleged hostile work environment discrimination and retaliation in violation of Title VII, [Compl. 88-99], as well as state law tort claims relating to Kpade's conduct and his supervision by DAL, Grane, and Nippon [*id.* ¶¶ 100-111].

4

Additionally, Jones asserted that she was not compensated for all the hours she worked, in violation of the FLSA.  In support, she stated that while working at Grane, her "hours worked were continuously adjusted [down] by Defendant Masuda from October 2015 until her termination in March 2016 despite working a full forty (40) hours per week."  [Compl. ¶¶ 37, 47, 100-103.]  She further alleged that when she confronted Masuda about the problem, he "claimed he had watched her on camera and stated she was not always working," but that she was never provided with any evidence of his assertion.  [*Id.* ¶ 48.]

### B.    First Amended Complaint and Grane's Motion to Dismiss

Following waiver of service [Docs. 5-7], DAL and Nippon[1] moved to dismiss certain of Jones's claims in late June and July 2017 [Doc. 8, 14], and Jones thereafter stipulated to the dismissal of DAL [Doc. 18].  On July 31, 2017, Jones filed her Amended Complaint [Doc. 19], and Nippon soon thereafter withdrew its motion to dismiss [Doc. 20] and filed its answer [Doc. 21].

In her Amended Complaint,[2] Jones asserts largely the same theories for relief, though only against Nippon and Grane.  [Am. Compl. Doc. 19.]  She clarifies

---

[1] Grane had not yet appeared in the action.

[2] The currently operative pleading in this case.

5

that DAL assigned her to work at Grane, which was an outsourced fleet truck operator for Nippon in Atlanta, Georgia; and that Grane and Nippon shared an office and facility in Atlanta, at which Jones worked. [*Id.* ¶¶ 13, 19-23.] According to Jones, Nippon also maintained employees at Grane's facility, including Kpade, and that both Grane and Nippon were her and Kpade's joint employers based upon their supervision and control. [*Id.* ¶¶ 6, 13-15, 23.] Plaintiff alleges that she was supervised by both Abercrombie (with Nippon) and Masuda (with Grane). [*Id.* ¶¶ 16-18.]

Jones also reiterates her allegations regarding Kpade's purported offensive and harassing comments, conduct, and touching [Am. Compl. ¶¶ 38-50]; her complaints to Abercrombie and Masuda [*id.* ¶¶ 41-44]; the confrontation leading to her suspension, the investigation, and Kpade's separation [*id.* ¶¶ 53-65]; and the continued problems with Kpade's presence at work after the termination of his employment [*id.* ¶¶ 66-67].

Jones then further clarifies the alleged circumstances surrounding her own separation. Following Kpade's termination, Abercrombie allegedly began – presumably unfairly and/or without basis – criticizing her performance and work, complaining, among other problems, that Jones was not completing her work in a

6

timely manner. [Am. Compl. ¶ 72.] Jones asserts that she complained in February 2016 and sought a transfer, but no transfer, action, or investigation took place; and that she was told only that she did not need to transfer because Kpade had been fired. [*Id.* ¶ 71.] Finally, Jones alleges that, on March 20, 2016, she learned that Masuda had complained to DAL that she had been not coming into work on time (despite her prior allegation that she was allowed flexibility in her arrival time as an accommodation). [*Id.* ¶ 77.] As a consequence of Abercrombie and Masuda's retaliatory complaints/criticism, Jones asserts that, on or around March 30, 2016, her employment was terminated. [*Id.* ¶ 81.]

Jones reasserts claims for hostile work environment discrimination and retaliation under Title VII against Nippon and Grane [Am. Compl. ¶¶ 86-97], as well as her claim for unpaid compensation under the FLSA against Grane [*id.* ¶¶ 33-37, 103-06]. She also asserts claims for negligent supervision and negligent retention against Nippon and Grane, based upon her allegations that they had prior knowledge of Kpade's history of workplace harassment and assault/battery, ignored Jones's complaints, and failed to protect her from Kpade. [*Id.* ¶¶ 98-102.]

On August 18, 2017, Grane moved to dismiss all of the claims asserted against it. With regard to the Jones's federal claims, Grane argues that (1) she

7

failed to exhaust her administrative remedies against it under Title VII because she never named Grane in any EEOC charge of discrimination (and because several retaliatory acts were not included in any EEOC charge); (2) she did not allege sufficient factual allegations to plausibly support a hostile work environment claim under Title VII; (3) she did not allege sufficient facts showing she engaged in protected activity to support a retaliation claim under Title VII; and (4) she failed to allege that she was paid less than minimum wage or deprived of any overtime pay in violation of the FLSA, and instead only alleged a "gap pay" claim that is not cognizable under the FLSA.  [Doc. 25.]  Grane also argues that because Jones's federal law claims should be dismissed, the court should decline jurisdiction over her state law claims, but that in any event, the negligent supervision and retention claims are subject to dismissal for lack of any underlying state law tort claim.  [*Id.*]

>    **C.    Proposed Second Amended Complaint**

On September 8, 2017, Jones moved to amend her complaint a second time. [Doc. 32.]  Her proposed Second Amended Complaint seeks (1) to add allegations regarding the completion of an intake questionnaire with the EEOC (and attaches the same) and the preparation of her EEOC charges by the EEOC, in order to address Grane's exhaustion arguments; (2) to reassert a claim for assault against

Nippon and Grane based upon their alleged ratification of Kpade's actions; and (3) to replace her claims for unpaid compensation under the FLSA with claims for quantum meriut and/or unjust enrichment.  [*Id.*; *see also* Doc. 32-1 (proposed Sec. Am. Compl.).]

With regard to her proposed exhaustion allegations in particular, Jones seeks to allege the following additional facts:

- "Plaintiff filled out an Intake Questionnaire identifying her employer as 'Nippon Cargo Airlines/Grane Distribution' and listed her employers' address as the 10 Southwoods Parkway location . . . [the] shared business address of both Nippon and Grane."

- "Plaintiff indicated that Masuda – an employee of Defendant Grane – was her immediate supervisor, and stated that she had complained to Masuda and Abercrombie – an employee of Defendant Nippon – regarding sexual harassment but nothing had been done."

[Sec. Am. Compl. ¶¶ 70-71.]  She also attaches the intake questionnaire she completed with the EEOC, showing that she named Nippon and Grane as her employers (in the questionnaire).  [*Id.* ¶ 72, Ex. A.]

Grane and Nippon oppose Jones's motion to amend, arguing that the proposed amendments are futile. [Docs. 38, 39, 40.] Grane reiterates its arguments that Jones's Title VII claims against it fail for lack of exhaustion (despite the intake questionnaire) and because it includes insufficient factual allegations to establish a plausible claim for relief; that jurisdiction over her state law claims should be declined based upon the futility of her federal claims; and that her negligent supervision and retention claims fail for lack of an underlying tort. [Docs. 38, 39.] Both Grane and Nippon argue further that the proposed claims for assault and battery – previously asserted in the original Complaint and withdrawn in the Amended Complaint – are futile because the proposed Second Amended Complaint does not include any basis for finding Grane or Nippon liable for Kpade's actions. [Docs. 38, 39, 40.]

Jones has not responded to Grane's argument for the dismissal of her FLSA claims [*see* Doc. 33], and has not filed a reply in support of her motion to amend.

## II.    LEGAL ANALYSIS

### A.    Jones's FLSA Claim

As an initial matter, because Grane's motion to dismiss is based upon the allegations as set forth in the Amended Complaint, because the proposed Second

Amended Complaint removes the challenged FLSA cause(s) of action, and because Grane and Nippon does not appear to oppose Jones's motion for leave to amend in this regard, the motion for leave to amend as it pertains to the removal of Jones's FLSA claim(s) should be granted, and the motion to dismiss should be denied as moot with regard to the FLSA claim.  *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007); *Malowney v. Fed. Collection Deposit Grp*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) ("a party may amend its pleading [] with the opposing party's written consent").[3]

### B.     Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state

---

[3] Moreover, as Jones has not responded to Grane's motion to dismiss as it pertains to any FLSA claim, the Court would otherwise deem any such claim abandoned.  *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *see also Holland v. Dep't of Health & Human Servs.*, 51 F. Supp. 3d 1357, 1376 (N.D. Ga. 2014) (finding plaintiff abandoned claim when defendant failed to respond to defendant's argument on motion to dismiss); *Bute v. Schuller Int'l Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned.").

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While it need not provide "detailed factual allegations," a complaint must provide factual allegations sufficient to plausibly set forth a plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court is not required to accept as true legal conclusions couched as factual statements, *Iqbal*, 556 U.S. at 678, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief," as required by Rule 8(a)(2).  *Id.* at 679 (internal quotation marks, bracket, and citation omitted). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford Cty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

In evaluating a motion to amend when, as here, the time for amending as a matter of course has expired, under Rule 15(a) leave to amend need not be granted if there is undue prejudice to the opposing party, undue delay in bringing the motion,

bad faith on the part of the movant, futility of the motion, or a repeated failure to cure deficiencies by previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape*, 556 F.3d 1232, 1241 (11th Cir. 2009). A "proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777 n.10 (11th Cir. 2000); *see also Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commnc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (amendment is considered futile if a "cause of action does not state a claim upon which relief can be granted"). Grane and Nippon both oppose amendment on the basis of futility, and as a result, the standard elucidated above applies to the evaluation of all claims challenged by Grane's motion to dismiss and Grane and Nippon's opposition to Jones's motion to amend. I therefore evaluate each of Jones's claims – both asserted in the Amended Complaint and as proposed in the Second Amended Complaint – in turn.

### C.    Jones's Title VII Claims

Grane makes two arguments that Jones's Title VII claims against it are subject to dismissal and/or futile: first, that Jones's Title VII claims against it are barred entirely because she failed to exhaust her administrative remedies, and

second, that Jones has not asserted sufficient factual allegations to plausibly support her harassment and retaliation claims.

### 1.    Administrative Exhaustion

In order to litigate claims for violations of Title VII, a plaintiff must first exhaust her administrative remedies, beginning with the filing of a charge of discrimination with the EEOC.  42 U.S.C. § 2000e-5(b); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir.2001); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1239 (11th Cir. 1989).  Failure to file a timely charge with the EEOC results in a bar of the claims not contained in a properly filed charge. *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1332 (11th Cir. 2000).  While the courts in the Eleventh Circuit liberally construe EEOC charges, particularly those prepared without the assistance of counsel, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge . . . ."  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *Penaloza v. Target Corp.*, 549 F. App'x 844, 848 (11th Cir. 2013).  At the same time, given the liberal construction requirement, a court should be reluctant to allow a procedural technicality to bar a Title VII claim.  *Gregory*,

14

355 F.3d at 1280.

Along these lines, a plaintiff may not normally bring a claim against a party that was not named an EEOC charge.  42 U.S.C. § 2000e-5(f)(1) (providing that, if the EEOC does not file suit, the plaintiff may bring "a civil action . . . against the respondent named in the charge"); *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994) ("Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action.").  That naming precondition "serves to notify the charged party of the allegation and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII."  *Virgo*, 30 F.3d at 1358. [4]

------

[4] "T[itle VII] is clear that to meet the requirements of Title VII, a charge has to be verified.  A charge 'shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.' 42 U.S.C. § 2000e-5(b)."  *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1307 (11th Cir. 2001) (citing *Vason v. City of Montgomery*, 240 F.3d 905 (11th Cir. 2001)).  The Eleventh Circuit has concluded that while an EEOC intake questionnaire, as a general rule, is not intended to operate as an EEOC charge, such a questionnaire might do so "when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process."  *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1239-42 (11th Cir. 2004) (quoting *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001)).  When courts have accepted an EEOC intake questionnaire as being tantamount to a charge for the purposes of timely filing, they have considered a number of factors, including what the questionnaire form indicated to the plaintiff and how the EEOC responded to it.  *Wilkerson*, 270 F.3d at 1320-21 (holding a

As with the construction of EEOC charges generally, courts liberally construe the naming condition as well, and the Eleventh Circuit in *Virgo* provided a list of five factors that should be considered in deciding whether to allow a suit to proceed against a party not named in an EEOC charge:  (1) the similarity of interest between the unnamed party and a party named in a charge; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed party received adequate notice of the allegations against it; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the

---

plaintiff's completed questionnaire, along with multiple phone calls by plaintiff and inconsistent responses by the EEOC, manifested sufficient intent to "activate the administrative machinery"); *see also Malone v. K-Mart Corp.,* 51 F. Supp. 2d 1287, 1299 (M.D. Ala. 1999) (holding a plaintiff's letter to the EEOC, together with attachments, constituted an EEOC charge).  On the other hand, the Eleventh Circuit has held that an intake questionnaire will not be deemed a charge if "the plaintiff clearly understood the intake questionnaire was not a charge because he later filed a timely charge; the EEOC did not initiate its investigation until after the plaintiff filed his charge; and the questionnaire form itself did not suggest it was a charge." *Francois v. Miami Dade Cty.*, 432 F. App'x 819, 822 (11th Cir. 2011).  Given the lack of evidence regarding the circumstances in which Jones completed her intake questionnaire and ultimately filed her charges with the EEOC, it is unclear whether her questionnaire should function as a charge for purposes of exhaustion.  Because, as explained below, the exhaustion issue may be resolved elsewise for pleading purposes, I need not address the parties' arguments on the issue at this time.

16

unnamed party actually was prejudiced by its exclusion from the EEOC proceedings. 30 F.3d at 1358. Alongside these considerations, it is also proper to consider the scope of the investigation that would reasonably grow out of the EEOC charge as written, and whether it would naturally encompass the unnamed party. *See Hamm v. Members of Bd. of Regents of Fla.*, 708 F.2d 647, 650 (11th Cir. 1983). This final *Hamm* "factor weighs in favor of inclusion of an unnamed party if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's reasonable investigation growing out of the charge." *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010) (citation omitted).

Grane argues that the factors above "weigh heavily in favor of dismissal" in this case because Grane has no similarity of interest with Nippon, Jones was well aware of Grane's identity (given that she named the company in her intake questionnaire), Grane had no notice of the allegations against it, Grane had no opportunity to participate in the reconciliation process, and Grane was prejudiced by its inability to present its case to the EEOC and dispose of the charges at the administrative level. [*See* Doc. 25 at 7-13, *see also* Doc. 38 at 6-11.] Grane does not address the additional *Hamm* factor. Importantly, Grane has not attached any

documentation, affidavits, declarations, or other evidence in support; requested that the motion to dismiss be converted to one for summary judgment; or otherwise petitioned to Court to consider facts outside of the pleadings and attachments. *See Bryant v. Rich*, 530 F.3d 1368, 1375-76 (11th Cir. 2008) (allowing courts to consider facts outside of the pleadings to resolve motions to dismiss for failure to exhaust, since the issue is one of abatement, not an adjudication on the merits); *see also Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892-93 (11th Cir. 2014).

While Grane's argument may ultimately have merit, it is entirely dependent upon the presentation of evidence not currently before the Court, and ignores the well-pled allegations asserted in this case. Generally speaking, a plaintiff need only allege she met any administrative prerequisites in a complaint, which Jones has done here. *Rizo v. Ala. Dep't. Human Res.*, 228 F. App'x 832, 836 (11th Cir. 2007) (citing *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)).[5] Moreover, unacknowledged by Grane, the majority of the cases cited in

---

[5] The procedural requirements of Title VII are viewed as conditions precedent to filing a lawsuit, and not as jurisdictional requirements. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver,

support of its argument were decided upon motions for summary judgment, or otherwise decided after the parties were allowed to present evidence relating to the issue of exhaustion, including the *Virgo* and *Hamm* factors. *See e.g.*, *Lewis*, 402 F. App'x at 457; *Gregory*, 355 F.3d at 1279; *Virgo*, 30 F.3d at 1358; *Hulsey v. Gunn*, 905 F. Supp. 1067, 1071 (N.D. Ga. 1995); *Plaisance v. Travelers Ins. Co.*, 880 F. Supp. 798, 806 (N.D. Ga. 1994), *aff'd*, 56 F.3d 1391 (11th Cir. 1995); *see also Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004) (issue of joint employment decided at summary judgment stage); *Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1245 (11th Cir. 1998) (same). In each of these cases, then, evidence was put before the court regarding the *Virgo* and *Hamm* factors – in particular, regarding the similarity of interests between the named and the unnamed parties and whether the unnamed party received notice of the charge, both of which, in turn, informed whether there was an opportunity to participate in the reconciliation process and whether prejudice arose.

---

estoppel, and equitable tolling."). Under Federal Rule of Civil Procedure 9(c), "it suffices to allege generally that all conditions precedent have occurred or been performed."

19

Additionally, and largely ignored by Grane, Jones has specifically alleged or attached documentation[6] tending to suggest:

- Grane and Nippon had a long term contractual relationship in which Grane operated fleet trucks within Nippon's distribution and supply chain;

- Grane and Nippon shared an operations facility located at 10 Southwoods Parkway, Atlanta, Georgia (the "Facility");

- Jones, alongside Grane and Nippon employees, worked at that Facility;

- Jones and her alleged harasser were supervised by Grane and Nippon employees (Masuda with Grane, and Abercrombie with Nippon) at the Facility, and were both jointly employed by Grane and Nippon;

- Those Grane and Nippon supervisors participated in unlawful retaliation against Jones;

- Jones filed an intake questionnaire on March 4, 2016, naming Grane and Nippon as her as her employers, sharing an address at the Facility,

---

[6] "As a general rule, the district court must 'limit[] its consideration to the pleadings and exhibits attached thereto' when deciding a Rule 12(b)(6) motion to dismiss." *Lewis*, 305 F. App'x at 627 (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks omitted)). Documentation may be considered on a motion to dismiss without converting it to one for summary judgment, if it is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). An EEOC charge or intake questionnaire referenced or attached to a complaint, for example, may be considered. *Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013), *recons. denied*, 3:13-CV-112-TCB, 2014 WL 1711796 (N.D. Ga. May 1, 2014).

and listing Masuda and Abercrombie as her supervisors and/or persons to whom she complained about harassment; and

- Jones filed a two EEOC charges naming Nippon as her employer, "C/O Grane Distribution, 10 Southwoods Parkway," and explaining that she was unlawfully retaliated against after complaining to Masuda and Abercrombie.

As presented in her Amended Complaint, proposed Second Amended Complaint, and the attachments thereto, then, Jones has explicitly alleged at least the following: (1) that Nippon and Grane shared a substantial similarity of interests through their (a) extended contractual relationship, (b) an apparent joint logistics venture, and (c) control of the shared Facility and shared employees; and (2) that Grane, through (a) the EEOC charges that were mailed courtesy of the company, as well as the (b) fact that its own employee, Masuda, was named as a retaliator and was subject to investigation,[7] would have had adequate notice of the complaints made against it and its employees in the charges.  *See, e.g., Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327 (M.D. Fla. 1999) (failure to name party in an EEOC charge did not prevent Title VII claims from proceeding because unnamed party and named party were highly integrated with respect to ownership and received

---

[7] Jones alleges that Kpade, also named in the charges, was jointly employed by Grane as well.

notice of the charge); *Hammer v. Hillsborough Cty.*, 927 F. Supp. 1540, 1543-44 (M.D. Fla. 1996) (even though not named in EEOC charge, county had sufficient identity of interest with city-county planning commission named in charge because commission's expenditures were subject to approval by county).  Moreover, based upon the allegations described above, the scope of an investigation into the complaints contained in the charges would naturally tend to encompass Grane, given Jones's allegations that it jointly employed her and Kpade, her alleged harasser; employed Masuda, her alleged retaliator; and jointly maintained the Facility at which the alleged wrongdoing occurred and in which the potential witnesses all worked.  Finally, the foregoing also tends to plausibly suggest that Grane would have been drawn into the investigation; would have therefore had an opportunity to participate in the reconciliation process; and would, as a result, not have been prejudiced by Jones's failure to explicitly name Grane as her employer in the charges (made against Nippon "C/O Grane").  Accordingly, the *Virgo* and *Hamm* factors, at least as alleged on the face of the pleadings and attachments, in fact weigh in favor of allowing the lawsuit to proceed against Grane.[8]

_____

[8] That discovery into the issue might produce evidence showing that the *Virgo* and *Hamm* factors weigh against exhaustion and justify summary judgment in favor of Grane is immaterial the sufficiency of the pleadings.

The two cases cited by Grane that were decided at the motion to dismiss stage to not advise otherwise.  In both, the issue of exhaustion, based upon the pleadings, was much clearer.  For instance, in *McAdoo v. Metropolitan Atlanta Transit Authority*, decided upon my own recommendation, the unnamed defendant was not acknowledged in any capacity in the EEOC charge, the conduct alleged in the EEOC charge was categorically different from that alleged against the unnamed defendant in the complaint and did not involve employees of the unnamed party, and there was no overlap between employees, facilities, or operations; as a result, there was no reasonable way an investigation in the complaints contained in the charge would encompassed the alleged wrongdoing against the unnamed party. 1:16-CV-734-WSD, 2017 WL 955379, at *1-4 (N.D. Ga. Mar. 13, 2017).  Similarly, in *Woldu v. Hotel Equities, Inc.*, it was clear from the complaint itself that, unlike the present case, the purposes of administrative exhaustion had not been met – the defendant had not been sent or named in any way in the EEOC charge; the complaint did not allege any management overlap or other similarities of interest between in the named and unnamed businesses; and there were no allegations that suggested that the defendant would had ever been on notice that a charge had been

23

made against it or that a reasonable investigation would encompass it.[9]  1:09-CV-0685-HTW-CCH, 2009 WL 10668443, at *5-6 (N.D. Ga. Sept. 18, 2009), *report and recommendation adopted*, 2010 WL 11507854 (N.D. Ga. Mar. 18, 2010). Only because the complaints and charges in those cases were so clearly bereft of facts tending to suggest either that the unnamed party might have had notice of the charge or that it had an opportunity to participate in the administrative process was dismissal warranted.  The present case, as outlined above, is considerably more robust in this regard.  For the reasons outlined above, then, Jones's claims against Grane should be allowed to proceed despite her failure to explicitly name Grane as her employer in her EEOC charges.[10]  Accordingly, with regard to Grane's arguments that Jones's claims are subject to dismissal and/or futile for failing to name it in the EEOC charge, Grane's motion to dismiss should be denied, and Jones's motion for leave to amend should be granted.[11]

---

[9] Moreover, the charge in *Woldu* was made with the assistance of counsel, and therefore entitled to a less liberal construction.  *Id.* at *5.

[10] This recommendation is limited to the current posture of the case, without prejudice to Grane's right to refile with supporting evidence.

[11] Because I find that for present purposes, Jones has alleged sufficient facts to support exhaustion, there is no need to address Grane's further argument that Jones did not allege sufficient facts to support joint employment by Nippon and

Beyond the failure to explicitly name it in the EEOC charges, Grane[12] also argues that Jones has failed to exhaust her administrative remedies with regard to certain acts of retaliation not explicitly included in her charges.  [Doc. 25 at 13-17; *see also* Doc. 39 at 11-12.]  In particular, Grane argues that her EEOC charge limits her retaliation claim to retaliation based upon (1) harassment, (2) being subjected to comments; (3) being informed of the Kpade's intent to harm her, (4) being denied a transfer at work, and (5) her discharge; but that she failed to exhaust her administrative remedies as it pertains to retaliation based upon allegations that (1) her hours were altered, (2) she was sent home without pay, (3) she was unfairly criticized, (4) she was told she could have flexible start times but then criticized for the same.  [*Id.*]

As discussed above, a judicial complaint is limited by the scope of the EEOC investigation that can reasonably be expected to grow out of a charge of discrimination.  *Alexander*, 207 F.3d at 1332.  Along these lines, the Eleventh Circuit has explained that while new Title VII claims not raised in a charge are

---

Grane (in order, according to Grane, to bypass the exhaustion issues discussed). [*See* Doc 25 at 12-13.]

[12] Nippon does not join in this argument, though it would apply to the claims against it.

typically inappropriate for judicial review, such "claims are [still] allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint." *Gregory*, 355 F.3d at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)); *see also Penaloza*, 549 F. App'x at 848.  Importantly, with regard to retaliation claims specifically, the Eleventh Circuit has generally held that when they are based on adverse actions taken ***after*** an EEOC charge is filed, they may be said to grow out of the previously filed charge, and it is not necessary for a plaintiff to file a second charge alleging specific examples of further retaliation.  *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168 (11th Cir. 1988) (explaining that it "is the nature of retaliation claims that they arise after the filing of the EEOC charge," and requiring amendment for retaliation claims "would serve no purpose except to create additional procedural technicalities") (quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981)).  This is because, generally speaking, retaliation claims are considered to grow out of the original discrimination itself and any protected activity taken in response to it.  *Gregory*, 355 F.3d at 1279-80 (holding that retaliation claims made proceed if they are "like or related to, or grew out of, the allegations contained in [an] EEOC charge."); *see also Duble*, 572 F. App'x at 892-93 ("It is unnecessary for a plaintiff to exhaust administrative

26

remedies prior to filing a judicial claim of retaliation if that claim grew out of an earlier charge . . . [unless] no other properly raised judicial claim exists to which the retaliation claim may attach.").  On the other hand, "acts of retaliation that occurred ***prior*** to the date of [discrimination alleged in an] EEOC charge that were not included in the charge" are typically not exhausted and may not be included in a judicial complaint.  *Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 23 (11th Cir. 2010) (emphasis added) (citing *Gregory*, 355 F.3d at 1279).  In either event, the court is still required to liberally construe EEOC charges in favor of allowing Title VII claims to proceed. *Gregory*, 355 F.3d at 1280 ("Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII].'" (quoting *Sanchez*, 431 F.2d at 460-61)).

Grane improperly ignores both the Eleventh Circuit's treatment of the exhaustion of retaliation claims [13] and the requirement that EEOC charges be

---

[13] Plaintiff cites only to cases discussing the exhaustion of discrimination claims, not claims of retaliation.  [*See* Doc. 25 at 14-15 (citing *Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 931 (11th Cir. 2017); *Stuart v. Jefferson Cty. Dep't of Human Res.*, 152 F. App'x 798, 801 (11th Cir. 2006); *Lambert v. Ala. Dep't of Youth Servs.*, 150 F. App'x 990, 994 (11th Cir. 2005); *Dalton v. Centers for Disease Control and Prevention*, 1:11-CV-3392-MHS, 2012 WL 12552340, at *2 (N.D. Ga. Sept. 13, 2012), *aff'd sub nom. Dalton v. Centers for Disease Control and Prevention and Agency for Toxic Substances and Disease Registry*, 602 F.

liberally construed.[14]  While new, discrete ***discrimination*** claims must be asserted in an EEOC charge in order to preserved, *see Stuart*, 152 F. App'x at 801 (discrete acts of discrimination, including those similar to or occurring within months of other such acts, do not amplify, clarify, or grow out of the earlier acts), as discussed, new ***retaliation*** claims occurring after the filing of an EEOC charge are considered to grow out of the original discrimination itself and any protected activity taken in response to it.  *Gregory*, 355 F.3d at 1279-80.  In this case, all of the alleged retaliatory acts Grane seeks to dismiss for failure to exhaust appear to have occurred after Jones complained about Kpade's alleged sexual harassment and assault, and/or after she filed her initial EEOC charge [*see* Am. Compl. ¶¶ 66-85, 94-97], and as a result, should be considered to grow out of the initial discrimination and Jones's protected activity in complaining and filing her charge. *Gregory*, 355 F.3d at 1279-80.  Indeed, a reasonable investigation into the sexual harassment and assault allegations would have revealed that Jones was suspended without pay; just as a reasonable investigation into her allegations that she was

---

App'x. 749 (11th Cir. 2015); *Thomas v. Bed Bath & Beyond, Inc.*, 508 F. Supp. 2d 1264, 1275 (N.D. Ga. 2007); *Plaisance*, 880 F. Supp. at 806).]

[14] [*See* Doc. 25 at 13 ("Thus, the scope of a Title VII lawsuit is strictly limited to those claims listed in the EEOC charge. . . .").]

"subjected to comments," would reveal further criticism of her work; and a reasonable investigation into her discharge would reveal that Jones was improperly characterized as missing work when she alleges she was given a flexible schedule. Accordingly, the challenged instances of retaliation do not fail for lack of exhaustion.[15]  Grane's motion to dismiss such claims on exhaustion grounds should be denied, and Jones should be granted leave to assert them in her proposed Second Amended Complaint.

### 2.    Factual Sufficiency

Grane next argues that Jones's hostile work environment and retaliation claims under Title VII are subject to dismissal because she has not provided sufficient factual allegations to support that she was subjected to an objectively hostile work environment.  [Doc. 25 at 16-21.]  Grane contends that this failure defeats both her hostile work environment claim, because she cannot make out a prima facie case, and her retaliation claim, because she cannot establish that she had an objectively reasonable belief that the conduct she opposed was prohibited

---

[15] Again, this recommendation is limited to the current posture of the case, without prejudice to Grane's right to reassert the argument as it pertains to specific retaliation claims Grane can demonstrate were in fact not exhausted because, for instance, they occurred prior to the date Jones filed her EEOC charge (and argument not presently made by Grane in its motion).

29

by Title VII, and therefore did not actually engage in protected activity. [*Id.*] Grane is mistaken on both counts.[16]

The Supreme Court has explained that discriminatory conduct that is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule on workplace equality." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). A hostile work environment claim under Title VII, then, is predicated on proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21; *accord Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The Eleventh Circuit has held that, to set out a prima facie case of a hostile work environment, a plaintiff must show that (1) she belongs to a protected group, (2) she has been subject to unwelcome harassment, (3) the harassment is based on a protected characteristic of the employee, (4) the harassment is sufficiently "severe or pervasive" to alter the terms and conditions of employment and create a

_____

[16] Nippon once again does not join these arguments, even though, if successful, they would apply with equal force to Jones's Title VII claims against it. [*See* Doc. 40.]

30

discriminatorily abusive working environment, and (5) the employer is responsible for the hostile work environment under a theory of vicarious or direct liability. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012); *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).  Notably, as a matter of pleading, however, a plaintiff need not allege each and every element of the prima facie case.  *See EEOC v. Jomar Transp., Inc.*, No. 1:13-cv-3143-ODE, 2014 WL 12069843, at *3 (N.D. Ga. Aug. 12, 2014).  Rather, the complaint must contain sufficient factual matter to plausibly state a claim for relief.  *Id.*

To establish the "severe or pervasive" element, a plaintiff must plausibly allege that she subjectively perceived the working environment to be abusive, and that a reasonable person would view the environment as hostile and abusive. *Miller*, 277 F.3d at 1276; *see also Faragher*, 524 U.S. at 787.  Not all objectionable conduct or language amounts to discrimination, *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010), as Title VII does not create a "general civility code." *Faragher*, 524 U.S. at 788.  "[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" do not typically constitute a hostile work environment.  *Id.*  Instead, to qualify as severe or pervasive, harassment must "alter the terms or conditions of []employment." *Mendoza v.*

31

*Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Either severity or pervasiveness is sufficient to establish a violation of Title VII, however. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998) (noting that hostile work environment claims "require[ ] harassment that is severe or pervasive"); *see also Reeves*, 594 F.3d at 808. In evaluating whether the harassment was objectively hostile in this respect, a court must consider the totality of the circumstances, which includes among other things, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Burlington*, 524 U.S. at 743.

As discussed above, Jones has alleged that Kpade made sexually offensive comments, touching his penis in front of her, requesting fellatio, grabbed her buttocks, and groped her breasts. In arguing that this is insufficient to state a plausible claim for relief, Grane cites to several cases decided at summary judgment [17] in which isolated instances of offensive comments and/or minor touching was found not to satisfy the severe or pervasive element. [*See* Doc 25 at

_____

[17] Plaintiff does not bother to find a single case for this argument decided on the pleadings.

32

19-20.]  While Grane is once again correct that often, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment,'" to support a hostile work environment claim, *Faragher*, 524 U.S. at 788, there is no evidence before the Court regarding the specifics of the incidents alleged, in particular the severity of the alleged assaults here (*i.e.* the grabbing and groping).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only be looking at all the circumstances." *Harris*, 510 U.S. at 23.

Jones's only burden at this stage is to plausibly suggest she was subjected to a hostile work environment.  *Jomar Transp.*, 2014 WL 12069843, at *3; *see also Alexander-Igbani v. DeKalb Cty. Sch. Dist.*, 1:11-CV-4535-AT-JSA, 2012 WL 9508020, at *7 (N.D. Ga. Dec. 21, 2012) (holding that while proof may ultimately show that the conduct amounted only to "occasional acts of harassment," at the pleading stage, a plaintiff's "allegations [need only] state a plausible basis upon which to assert a claim for hostile work environment").  Jones has done so here.  Indeed, the Eleventh Circuit has stated that is assumes even isolated incidents of "fondling and sexual assault are sufficient[ly serious] to create a sexually hostile and abusive work environment that altered the terms and conditions of [an

33

individual's] employment." *See Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1285 (11th Cir. 2003) (plaintiff alleged unwelcome sexual advances and rape, which employer conceded constituted sexually hostile work environment); *see also U.S. E.E.O.C. v. Dillard's, Inc.*, No. 607-CV-1496-ORL-19GJ, 2009 WL 789976 (M.D. Fla. Mar. 23, 2009) (co-worker blocking the plaintiff/victim in a small room and masturbating in front of her for a few seconds was sufficiently severe). Likewise, the Circuit Court has also concluded also that complaints to human resources, combined with a request for transfer away from a specific employee, may create a genuine issue as to whether a plaintiff's job performance was sufficiently affected to amount to a change in the terms of employment. *Shockley v. HealthSouth Cent. Ga. Rehab. Hosp.*, 293 F. App'x 742, 747 (11th Cir. 2008). That the proof may ultimately demonstrate that the alleged incidents were not severe or pervasive is immaterial to the present inquiry. *Jomar Transp.*, 2014 WL 12069843, at *3; *Alexander-Igbani*, 2012 WL 9508020, at *7. Jones has plausibly suggested that she was subjected to sexually offensive comments and sexual assault such that she plausibly states a claim for relief for hostile work environment sexual harassment.

34

For these same reasons, then, Jones has also plausibly alleged the objective reasonableness of her belief that the conduct that she opposed was unlawful,[18] and therefore has sufficiently alleged she engaged in protected activity to support retaliation claim.[19]

_____

[18] The Court further notes that Grane's argument challenging whether Jones had an objectively reasonable belief that the complained of behavior amounted to illegal sexual harassment, applies only to the extent that Jones bases her retaliation claims solely on her internal complaints to management.  *See Hudson*, 209 F.Supp.2d at 1311-12.  Under Title VII, it is unlawful for an employer to retaliate against an employee because she has *either* (1) opposed any employment practice made an unlawful practice by Title VII (the opposition clause) *or* (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes (the participation clause).  *See* 42 U.S.C. § 2000e-(3)(a); *Mulkey v. Bd. of Comm'rs of Gordon Cty.*, 488 F. App'x 384, 389 (11th Cir. 2012); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). Under the participation clause, unlike the opposition clause, expansive protection is available to an employee who participates in adjudicative proceedings conducted by the federal government and its agencies, including filing an EEOC charge of discrimination as Jones has, and a plaintiff need not demonstrate the objectively reasonable belief required when proceeding under the opposition clause.  *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

[19] Grane also makes a two-sentence argument that Jones's allegation of retaliatory criticism is insufficiently material to constitute a retaliation claim, again citing summary judgment cases.  [Doc. 16-17.]  Grane once again ignores the posture of the case, and the fact that no evidence has been presented regarding the nature of the criticism and its effect on the terms and conditions of Jones's employment.   Moreover, Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"; and a plaintiff's burden is therefore not as onerous in the retaliation context as in the discrimination context.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  Moreover, court must consider the

For the reasons outlined above, then, Grane's motion to dismiss should be denied as it pertains to Jones's Title VII claims, and Jones's should be granted leave to proceed with her Title VII claims as stated in her proposed Second Amended Complaint.

### D.    State Law Claims

Grane next argues that the Court should decline to exercise supplemental jurisdiction over Jones's state law claims, or, alternatively, that they are subject to dismissal.  As to supplemental jurisdiction, for the reasons detailed above, the exercise of supplemental jurisdiction remains appropriate for Jones's state law claims arising from the same nucleus of facts and law as her federal claims.  28 U.S.C. § 1367(a).  Grane has not argued that any of the other exceptions listed in 28 U.S.C. § 1367(c) apply; therefore, dismissal for lack of jurisdiction is unwarranted.  *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 531-32 (11th Cir. 2015) ("[T]he doctrine of supplemental jurisdiction under § 1367 is less flexible than it was [previously] insofar as it permits dismissal of supplemental

---

"totality of the alleged reprisals," and not a single alleged act of retaliation alone. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006).  Accordingly, Grane's argument is better saved for summary judgment, and Jones's claims should be allowed to proceed.

36

claims only under particular circumstances.   District courts only possess the authority to dismiss claims brought under § 1367 if [the exceptions enumerated in § 1367(c) apply].").

   As to the merits of the state law claims, I address the arguments presented against each claim in turn below.

### 1.      Assault and Battery

   Grane first argues that Jones's proposed amendments to assert claims against Grane for assault and battery are futile because she has not alleged facts plausibly suggesting that Grane has any form of *respondeat superior* liability for Kpade's conduct, or otherwise ratified such conduct.  [Doc. 39 at 9-13.]  Nippon joins this argument.  [Doc 40. at 3-4.]  Jones has not filed a reply in support or otherwise addressed or responded to Defendants' argument elsewhere in her papers, and the Court has no duty to formulate arguments that Jones might have made in response, but did not.  *See Lyes*, 126 F.3d at 1388; *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it.").   When an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such

claims are deemed abandoned and subject to dismissal.  *See Coalition*, 219 F.3d at 1326; *Holland*, 51 F. Supp. 3d at 1376; *see also Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (finding that "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned") (citing *Resolution Tr. Corp.*, 43 F.3d at 599). Accordingly, because Jones has not addressed Defendants' arguments that the proposed assault and battery claims are futile, she has abandoned such claims, and leave to amend to assert them should be denied.

Substantively, the Court notes that under Georgia law, an employer "cannot be held liable for the tortious acts committed by their employees outside the scope of employment and not in furtherance of the [employer]'s business," even if the employer "allowed [the wrongdoer] access into [the victim's space] and provided him with an opportunity to commit tortious acts against [her]."  *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 613 (2003); *see also Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (1996) (sexual misconduct of employee was unrelated to employee's duties and therefore outside scope of employment or in further of employer's business).  Likewise, while "[a]n employer may ratify tortious conduct by an employee, and thereby assume liability for

38

unauthorized conduct," in order "for liability to be imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment." *Travis Pruitt & Assocs. P.C. v. Hooper*, 277 Ga. App. 1, 3-4  (2005) (citations omitted); *see also Cramer v. Bojangles' Rests., Inc.*, 2:10-CV-0159-RWS-SSC, 2012 WL 716176, at *16-17 (N.D. Ga. Feb. 8, 2012) (even if employer had knowledge of tortious conduct, without facts supporting that tortious conduct was "committed in furtherance of [the employer's] business rather than for [] personal reasons," liability does not attach), *report and recommendation adopted*, 2012 WL 716028 (N.D. Ga. Mar. 6, 2012), *aff'd*, 498 F. App'x 885 (11th Cir. 2012); *Holy Fellowship Church of God in Christ v. Brittain*, 240 Ga. App. 436, 438 (1999) ("For ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act.").  Other than Jones's conclusory allegations that Defendants "ratified" Kpade's conduct, and that Kpade "act[ed] as an agent for Defendants Grane and Nippon" when he "assaulted [Jones] by threatening to kill her [and] raising his fist as if to strike her," which the Court need not accept for present purposes, there are no allegations that Kpade's conduct was within the scope of his

employment by Defendants, in the furtherance of either Defendant's business, or of any benefit to Defendants.  [*See* Sec. Am. Compl. ¶¶ 98-101.]

### 2.     Negligent Supervision and Retention

Grane finally argues that the Jones's allegations fail to state a claim for negligent supervision and retention because such claims are "derivative of [] underlying tort claim[s] and cannot survive without an underlying tort cognizable under Georgia law."  [Doc. 25 at 24-25.]  Grane contends that because Jones has neither asserted any independent claim for assault, battery, intentional infliction of emotional distress, or other tort in relation to Kpade's conduct (as in the case of the Amended Complaint), nor proposes any such claim that is not subject to dismissal (as in the case of the proposed Second Amended Complaint), she cannot sustain a cause of action for negligent supervision and retention.[20]  [*Id.*; *see also* Doc. 39 at 13-14.] Jones responds, arguing that the allegations of assault and battery by Kpade in her pleadings are sufficient to support claims of negligent supervision and retention against Grane and Nippon.  [Doc. 33 at 14-15.]

---

[20] Once again, Nippon does not join these arguments, even though, if successful, they would apply with equal force to Jones's negligent supervision and retention claims against it.  [*See* Doc. 40.]

A claim for negligent hiring, retention, or supervision arises under Georgia law when an employer negligently hires, retains, or supervises an employee and that employee subsequently harms the plaintiff. *See Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001)); *see also* O.C.G.A. § 34-7-20 (an "employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency"). To establish such a claim, a plaintiff must allege and ultimately prove that the employer knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff. *Id.*; *see also Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2009); *H.J. Russell & Co. v. Jones*, 250 Ga. App. 28, 30 (2001). Moreover, there must also be an underlying state law tort alleged that forms the basis of the injury against the plaintiff, because negligent retention is a "derivative" claim that can only survive to the extent that the underlying state tort claim survives. *See, e.g., Metro. Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 489 (2006) ("*MARTA*"); *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (1999). Because it must be a state tort claim, federal Title VII claims for sexual harassment and/or retaliation will generally not support a claim under Georgia law for negligent supervision and retention. *See Canty v. Fry's Elecs.,*

41

*Inc.*, 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010) ("There is no distinct tort in Georgia law for harassment, retaliation or discrimination."); *Orquiola v. Nat'l City Mortg.*, 510 F. Supp. 2d 1134, 1140 (N.D. Ga. 2007) ("Like there is no distinct tort in Georgia law for 'sexual harassment,' there is no separate tort under Georgia law for "retaliation.'  Georgia courts have described negligent retention as a 'derivative' claim thus requiring an underlying tort of which Plaintiff has none in state law.").[21]

Importantly, however, for present pleading purposes, a plaintiff need not allege that the employer itself committed the underlying tort.  *See Hosp. Auth. of Valdosta/Lowndes Cty. v. Fender*, 342 Ga. App. 13, 23 (2017) ("claims against a defendant employer for the negligent hiring, training, supervision, and retention of an employee are derivative of the *underlying tortious conduct of the employee*.") (emphasis added), *cert. denied* (Dec. 11, 2017); *Malphurs v. Cooling Tower Sys., Inc.*, No. 5:13-CV-443(MTT), 2016 WL 915191, at *8 (M.D. Ga. Mar. 4, 2016) (negligent retention and supervision claim against employer sustained over motion

---

[21] *But see Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 815 (11th Cir. 2006) (reinstating negligent retention claim based upon reinstatement of Title VII claim and IIED claim); *Bowers v. American Heart Assoc.*, 513 F. Supp. 2d 1364, 1370 (N.D. Ga. 2007) (without argument in opposition, allowing amendment to add a claim for negligent retention, even in the absence of a separate claim for an underlying state tort).

for summary judgment on the basis of claims for IIED and sexual battery against employee, who allegedly grabbed plaintiff's breast/nipple); *Couick v. Morgan*, 4:10-CV-153, 2010 WL 5158206, at *7 (S.D. Ga. Dec. 14, 2010) (noting lighter burden at pleading stage, and allowing claims of negligent supervision to proceed based upon underlying tort claim for IIED asserted against fellow employee); *MARTA*, 280 Ga. App. at 488-90 (sustaining negligent retention claim against employer on the basis of a battery claim against employee, which was in turn based upon a "brief and isolated incident" in which the plaintiff alleged the employee "touch[ed her] breasts and grop[ed her] body").

As the Court in *MARTA* noted, under Georgia law, a tort claim for battery has a "relatively low threshold" and may be supported by "even minimal touching," including "brief and isolated incidents" of groping. *See MARTA*, 280 Ga. App. at 489 (citing, among others, OCGA § 51-1-13 and *Jarrett v. Butts*, 190 Ga. App. 703, 705 (1989)).  In this case, Jones has alleged instances of unwanted and offensive sexual touching by Kpade that are nearly identical to those in *MARTA* and *Malphurs* supporting claims of battery against the plaintiffs' co-workers; those battery claims in turn adequately supported claims for negligent supervision and retention against their respective employers.  *MARTA*, 280 Ga. App. at 489;

43

*Malphurs*, 2016 WL 915191, at *8.  As a result, Jones has alleged facts that would support an underlying state law tort claim against Kpade for battery,[22] which in turn provide adequate support for a derivative claim of negligent supervision and retention against Grane.[23]  Grane's motion to dismiss such claims should be therefore be denied, and Jones should be allowed to proceed with them as alleged in the proposed Second Amended Complaint.

### 3.     Quantum Meruit and Unjust Enrichment

Grane argues only that the Court should decline supplemental jurisdiction over Jones claim(s) for quantum meruit and/or unjust enrichment, not that they would be subject to dismissal.  As discussed above, because Jones's claims under Title VII survive Grane's motion to dismiss, the Court should also retain jurisdiction over her state law claims.

---

[22] Grane has not presented, and this Court is not aware, of any authority suggesting that Jones must assert an actual cause of action against Kpade for battery in order to assert a derivative claim against Grane for negligent supervision and retention.  There are a variety of reasons – for example, the co-worker's lack of financial resources or the Court's lack of personal jurisdiction – that might make it undesirable or untenable to assert claims against both an individual co-worker and an employer in the same lawsuit, and in any event, this Court is not prepared to create out of whole cloth a bar against negligent supervision and retention claims without clear state authority.

[23] As before, this recommendation is made without prejudice to either Defendant's argument at summary judgment that no such battery in fact took place.

### III.   CONCLUSION

For the reasons discussed above, I **RECOMMEND** that Grane's motion to dismiss be **DENIED**, and that Jones's motion for leave to amend be **GRANTED IN PART AND DENIED IN PART**.  Leave to amend should be **GRANTED** with regard to Jones's proposed amended claims against Defendants Nippon and Grane for discrimination, retaliation, negligent supervision and retention, and quantum meruit/unjust enrichment; however, leave to assert claims for assault and battery against them should be **DENIED**.

If the District Court adopts this recommendation, I further recommend that the District Court **DIRECT** Jones to file a Second Amended Complaint removing her proposed claims of assault and battery within seven (7) days of the District Court's order, which will serve as the controlling complaint in this action.  I finally **RECOMMEND** that the Court **DIRECT** Defendants Nippon and Grant to answer within fourteen (14) days of the docketing of the Second Amended Complaint.

IT IS SO RECOMMENDED this 12th day of January, 2018.

_____

JOHN K. LARKINS III
United States Magistrate Judge